NEW YORK COUNTY.—HON. D. G. ROLLINS, SURRO-
GATE.—July, 1885.

MACKAY *v.* FULLERTON.

*In the matter of the testamentary guardianship of the*
*persons of* ANNIE C. KING *and others, infants.*

The restrictions upon the authority of a Surrogate's court, to supersede
the general guardian of an infant, imposed by Code Civ. Pro., § 2472,
which permits the exercise thereof only "in the cases and in the
manner prescribed by statute, enable the lawful incumbent of such an
office successfully to resist an application for his removal until circum-
stances have been established which furnish a statutory warrant
therefor.

While a general guardian whose authority is derived exclusively from
judicial appointment may be deprived of his office by a Surrogate's
court, whenever "the infant's welfare will be promoted by the ap-
pointment of another guardian" (Code Civ. Pro., § 2832, subd. 6), the
power of the court is subject to a narrower limitation as regards a
testamentary guardian, who cannot be removed except upon grounds
which would justify it in displacing a testamentary trustee (id.,
§§ 2817, 2858).

APPLICATION for the removal of testamentary
guardian. The facts appear sufficiently in the
opinion.

A. D. DITMARS, *for petitioner.*

CHRISTOPHER FINE, *for guardian.*

THE SURROGATE.—This proceeding is brought by
Donald Mackay, as one of the executors of Elizabeth
R. B. King, deceased, for the removal of Phebe
Fullerton, the testamentary guardian of Mrs. King's
children.

It is provided by the seventh subdivision of § 2472 of the Code of Civil Procedure, that the Surrogate's authority to supersede the guardian of an infant "must be exercised in the cases and in the manner prescribed by statute."

In view of these restrictive provisions, it is manifest that one who is a lawful incumbent of the office of guardian, either by appointment of the Surrogate or by virtue of a testamentary provision, can success-fully resist in this court an application for his removal, until such facts and circumstances have been established as furnish statutory warrant for his super-session (Matter of Kerrigan, 2 *Civ. Pro.*, 334 ; Ledwith v. Union Trust Co., 2 *Dem.*, 439).

The various causes which will justify the Surrogate in removing *a guardian appointed under title seventh* of the 18th chapter of the Code are fully set forth in the six subdivisions of § 2832. It is declared, in the last of these subdivisions, that a guardian of the person may be deprived of his office, whenever " the infant's welfare will be promoted by the appointment of another guardian."

The legislature has seen fit to restrain the Surrogate's authority as regards *testamentary guardians* within somewhat narrower limitations. He can only direct the removal of such a guardian upon the grounds assigned in § 2858 ; that is, " in cases where a testamentary trustee may be removed as prescribed in title sixth of this chapter." This is a reference to § 2817, whose second subdivision alone has any possible application to the case at bar. If, within the meaning of that subdivision, this respondent has been

guilty of "misconduct in the execution of her trust," and has thereby become "unfit" to be continued in her office, she must be removed; otherwise, the Surrogate is powerless to displace her.

Now, there are no allegations in this petition that seem to me to require comment, except such as are in some way associated with the shameless behavior of the respondent's son, Richard Butler, towards the children, whom their mother had, by testamentary direction, entrusted to the respondent's care. I am so profoundly impressed with the truth of these revelations, and with the desirability of placing these infants under new conditions, not only for preventing future mischiefs, but for effacing from their minds, if possible, the memory of indignities which they have already suffered, that, if I had power, under the circumstances here existing, to substitute another guardian in place of this respondent, I should not hesitate to exercise it. But have I such power?

It is not suggested that the respondent connived at her son's disgraceful practices, and it is not claimed that she ever heard of them until about the time when they came to the knowledge of the petitioner. Nor does it appear that she knew or had reason to believe that evil consequences were likely to flow from the intimate relations that were allowed to exist between these children of a common household. Her treatment of her son, since the discoveries which gave rise to the present proceeding, has furnished no just cause for criticism. She is taken to task by petitioner's counsel for protesting her belief in the boy's innocence. But her credulity is perhaps not

unnatural in a mother, and it does not seem to have betrayed her into any act or omission that can fairly be interpreted as "misconduct in the execution of her trust."

This petition must, therefore, be denied.